NOT FOR PUBLICATION (Doc. No. 5)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| ALBERT DAVIS<br>        Plaintiff,<br><br>        v.<br><br>PHELAN HALLINAN & DIAMOND, PC.<br>AND JOHN DOES 1–X<br><br>        Defendant. | Civil No. 15-3621 (RBK-AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This action under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., comes before the Court on the motion of Defendant Phelan Hallinan Diamond & Jones, P.C. (pleaded as Phelan Hallinan & Diamond) ("Defendant") to dismiss Plaintiff Albert Davis's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or alternatively, for summary judgment pursuant to Rule 56. The FDCPA provides a cause of action to consumers who have been subjected to "the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. 1692(a). Here, Plaintiff argues that Defendant violated provisions of the FDCPA by sending collection notices to two addresses with which Plaintiff has no affiliation. For the reasons expressed herein, Defendant's motion is granted pursuant to Federal Rule of Civil Procedure 56.

   **I.   BACKGROUND**

The facts of this case are largely undisputed. Plaintiff owns the property located at 14 Rionda Court, Alpine N.J. 07620 ("the Property"). (Compl. ¶ 3.) Defendant is a law firm

specializing in debt-related matters, including loss mitigation, foreclosure and bankruptcy.  (Id. ¶ 4.)  On December 8, 2006, Plaintiff and his then wife Barbara Davis ("Ms. Davis") executed a mortgage on the Property with Wells Fargo Bank, N.A. ("Wells Fargo").  (Id. ¶ 2; Def.'s Br., Ex. B.)  Plaintiff also signed a promissory note, payable to Wells Fargo, secured by the mortgage on the Property.  (Compl. ¶ 3; Def.'s Br., Ex. C.)  In 2010, Plaintiff defaulted on the note and a foreclosure action commenced.  (Compl. ¶ 5–6.)  A state court dismissed the foreclosure action in 2011.  (Id. ¶ 6.)

Sometime after Plaintiff's default, in 2010, Wells Fargo assigned the mortgage and the note to Bank of America, N.A. ("Bank of America").  On March 26, 2015, Defendant, as counsel for Bank of America, filed a foreclosure complaint against Plaintiff.  (Id. ¶ 17.)  Prior to initiating the foreclosure action, Defendant sent notices of intent to foreclose ("the Notices") addressed to Plaintiff to three separate addresses:  (1) 14 Rionda Court, Alpine, N.J.; (2) 15 Linda Ave, Brockton, MA ("Brockton Address"); and (3) 14 Carlson Ct., Closter NJ ("Carlson Address").  (Id. ¶ 11–14.)  Plaintiff has no affiliation with the Brockton or Carlson Addresses— he has never lived or visited there and does not know who owns the residence or resides there.  (Id. ¶ 15.)  These notices, addressed to Plaintiff, stated that he owed $267,798.26 on his mortgage and further provided as follows:  "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  THIS NOTICE IS SENT TO YOU IN AN ATTEMPT TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE."  (Id. ¶ 16.)

Defendant obtained the Brockton and Closter addresses through an investigation assisted by a company called Full Spectrum Services ("FSS").  (Palma Decl. ¶¶ 4–5.)  FSS revealed

several potential addresses for Albert Davis and Barbara Davis, including the Brockton and Closter addresses. (Id. ¶ 6.) Defendant made Freedom of Information Act ("FOIA") requests to the U.S. Postal Service, seeking clarification on whether the Brockton address was associated with Plaintiff and whether the Closter Address was associated with either Plaintiff or Ms. Davis. (Id. ¶ 7.) The U.S. Postal Service indicated that the Closter address was a good address for Barbara Davis, but that the Brockton address did not exist. (Id. ¶¶ 9–10.) Nonetheless, to better assure that the Notices would reach Plaintiff,[1] Defendant sent them, by way of certified and regular mail, to the Property and the Brockton and Closter Addresses. (Id. ¶¶ 11–14.) Defendant addressed the Notices to Plaintiff only. The Notice sent via certified mail to the Brockton Address was returned to Defendant as undeliverable, and the Notice sent via certified mail to the Closter Address was returned to Defendant as unclaimed. (Id. ¶¶ 12–13.) Neither the Complaint nor the Record indicates whether the Notices sent by regular mail were received, and if so, by whom.

Plaintiff alleges that Defendant violated the FDCPA by sending the Notices to the Brockton and Closter addresses because doing so "conveyed information regarding a debt" to persons at those addresses. (Id. ¶ 18.) He also alleges that Defendant sent the Notices to the Brockton and Closter addresses for an "inappropriate purpose" in violation of the FDCPA. (Id. ¶ 23.) Having been briefed by the parties, the issues are now ripe for the Court's review.

## II.  LEGAL STANDARD

Defendant has styled its motion as one for dismissal under Federal Rule of Civil Procedure 12(b)(6), but requests that the Court convert the motion to one for summary judgment if it finds it cannot rely on the declaration and documents Defendant has submitted. Although

---

[1] Defendants were attempting to assure compliance with the New Jersey Fair Foreclosure Act, which requires notice be given to defaulting mortgage debtors. See Def.'s Br. 2; see also, N.J.S.A. 2A:50-56.

Rule 12(d) ordinarily requires a court to provide the non-moving party with notice of its intent to convert a motion, see Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989), a court may convert a motion to dismiss to one for summary judgment where the movant has already put the non-moving party on notice that the motion may be treated as one for summary judgment. See, e.g,, Razzoli v. Dir., Bureau of Prisons, 293 Fed. App'x 852, 855 (3d Cir. 2008); Scott v. Graphic Commc'ns Int'l Union, Local 97-B, 92 Fed. App'x 896, 902-03 (3d Cir. 2004); Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); see also Orden v. Borough of Woodstown, No. 13-5002, 2015 WL 8513255, at *4 (D.N.J. Dec. 11, 2015) (stating that when "a movant frames a motion to dismiss in the alternative as one for summary judgment, the Court may convert the motion without notice, because the motion itself puts the non-moving party on sufficient notice that the Court might treat the motion as one for summary judgment"). In his opposition to Defendant's motion, Plaintiff has addressed Defendant's argument under both the Rule 12(b)(6) and Rule 56 standards, and indeed argues that the Rule 56 standard is the appropriate standard under which to resolve the pending motion.[2] (See Pl.'s Br. 7–9.) This confirms that Plaintiff had notice that the Court may treat Defendant's motion as one for summary judgment.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether there is a genuine issue of

---

[2] Section I of Plaintiff's legal argument is titled "LEGAL STANDARD ON THE MOTION TO DISMISS BEFORE THE COURT, AND AN EXPLANATION OF WHY THE COURT MSUT USE THE SUMMARY JUDGMENT STANDARD IN LIGHT OF DEFENDANT'S EXPANDING OF THE RECORD." (Pl.'s Br. 7.)

4

material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Id. at 255.

In order to avoid summary judgment, a party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the nonmoving party fails to make a sufficient showing on any essential element of its case, the moving party is entitled to judgment as a matter of law. Id.

### III.   DISCUSSION

The FDCPA, 15 U.S.C. § 1692 et seq., provides a cause of action to consumers who have been subject to "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer; (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015) (quoting Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014)). Only the fourth element is at issue here. Plaintiff claims Defendant violated § 1692c(b), a provision prohibiting a debt collector from communicating about a consumer's debt to third parties, and § 1692d, which prohibits conduct the natural consequence of which is "to harass, oppress, or abuse any person, in connection with the collection of a debt." The Court will address each claim in turn.

**A. Communication with Third Parties in Violation of FDCPA § 1692c(b)**

Section 1692c(b) provides that a debtor "may not communicate" with unauthorized persons "in connection with the collection of any debt." The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692(a)(2). Here, Defendant argues that sending the letters to the Brockton and Closter addresses did not violate the FDCPA because the letters were not received and therefore did not actually <u>communicate</u> any information to a third party.

The evidence in the record demonstrates that the Notices most certainly contained information "in connection with the collection of any debt." § 1692c(b). The Notices revealed that Plaintiff was delinquent on his mortgage payments and explicitly sought payment. The Record also reveals that the Notices were sent to the Brockton and Closter addresses via certified mail and regular mail. The certified mail was returned to Defendant as undelivered/unclaimed. Plaintiff has not alleged in his Complaint nor produced any evidence that the Notices sent via regular mail were actually delivered or that the envelopes in which the Notices were sent contained any information relaying information concerning a debt.

Plaintiff argues that because the Defendant has provided no evidence that the Notices sent via regular mail were not actually delivered to a third party, the Court should presume the Notices delivered.[3] In so arguing, however, Plaintiff misunderstands its burden at the motion for summary judgment stage. In order to avoid summary judgment, plaintiff must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof

---

[3] Plaintiff argues that New Jersey Court Rule 1:5–4 creates a rebuttable presumption that "letters sent by regular mail were received even when contemporaneously sent certified mail is returned unclaimed." However, the Court fails to see why a New Jersey state court rule concerning the completion of service compels the Court to find that the Notices constitute a communication under <u>federal</u> law.

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); see also Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 367–68 (3d Cir. 2015) (discussing the "default rule" that plaintiffs bear the burden of proving their FDCPA claim while defendants bear the burden of proving an exception applies).  Moreover, aside from the conclusory allegation that Defendant "conveyed information regarding a debt to the person(s)" at the Brockton and Closter addresses, Plaintiff's Complaint contains no factual allegations as to whether a third party received the Notices, and if so, who.  In fact, Plaintiff concedes in his Complaint that he has no knowledge of who owns or resides at the Brockton and Closter addresses.  Based on the Record, it appears the Brockton Address does not even exist.  Having failed to sufficiently allege or provide evidence that a third party at either the Brockton or Closter addresses received the Notices, Plaintiff is not entitled to any presumption that the notices were received.

Thus, only a purely legal issue remains:  whether a letter seeking to collect a debt, sent to the address of a third party, but which the third party never receives, violates the FDCPA.  In the absence of direct Third Circuit precedent on this issue, the Court is left to consider persuasive authority, keeping in mind that the FDCPA is a remedial, strict liability statute that is focused on the conduct of the debt collector rather than the injuries sustained by the debtor.  Allen ex rel Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 & n.7 (3d Cir. 2011).

Multiple district courts have held that an unanswered phone call from a debt collector, where the debt collector does not leave a voicemail message, is not a "communication" that violates the FDCPA.  See, e.g., Zortman v. J.C. Christensen & Assocs., Inc., 870 F. Supp. 694, 706 (D. Minn. 2012) ("A hang-up call is not a communication.  A message that conveys no more information than a hang-up call shall not be construed a third party communication."); Cozmyk

v. Prompt Recovery Servs., Inc., 851 F. Supp. 2d 991, 994 (S.D. W.Va. 2012) ("[I]n the context of a debt collector communicating with a third party, a message is not a communication until it is received or understood by the third party."); Worsham v. Acct. Receivables Mgmt., Inc., No. 10-3051, 2011 WL 5873107, at *3 (D. Md. Nov. 22, 2011), aff'd, 497 Fed. App'x 274 (4th Cir. 2012) (finding that unanswered telephone calls "can hardly be considered 'communications' under the FDCPA"); Wilfong v. Persolve LLC, No. 10-3083, 2011 WL 2678925 (D. Or. June 2, 2011) ("[T]he court concludes that the receipt of an unanswered telephone call does not constitute a 'communication' within the meaning of the FDCPA."). As one district court reasoned, "communicating is an intransitive verb" defined as "to transmit information, thought, or feeling so that it is satisfactorily received or understood." Cozmyk, 2012 WL 1065456, at *3. Thus, these courts conclude, because an unanswered phone call does not actually convey information to a third party, it does not violate the FDCPA.

In a similar vein, the District Court of Minnesota has held that a mailing sent to but not received by the plaintiff was not a "communication" because the defendants, who sent the mailing, could not have conveyed any information to the plaintiff through the unreceived mailing. Seaworth v. Messerli, No. 09-3437, 2010 WL 3613821, at *5 (D. Minn. Sept. 7, 2010). There, the plaintiff charged that defendants had violated § 1692c(a)(1), which prohibits a debt collector from communicating with a consumer at an unusual or inconvenient time or place, because defendants sent correspondence to Plaintiff's home address, despite knowing that Plaintiff received her mail at a post office box. 2010 WL 3613821, at *5. Because the plaintiff's home address did not have a mailbox, the correspondence was sent back and plaintiff never received it. Id. The Court, citing the FDCPA's definition of "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any

medium," reasoned that the defendant could not have "conveyed" anything through correspondence that was never received.  See id. (relying on the American Heritage Dictionary's definition of "convey" which is "to make known; impart").

The Court finds these cases persuasive and holds that the undelivered Notices sent to the Brockton and Closter addresses do not constitute "communications" that violate the FDCPA.  As the court reasoned in Seaworth, it makes little sense that the undelivered Notices constitute "the conveying of information regarding a debt directly or indirectly to any person through any medium," see § 1692a(2), where there is no evidence that the Notices were delivered or even seen by a third party.  Moreover, an undelivered, unopened letter is akin to an unanswered phone call in that neither situation involves a sender or caller making contact with a third party.  In the age of Caller-ID, an unanswered telephone call has the possibility of conveying even more information than do the undelivered Notices at issue here, where there is no evidence or allegation that the Notice's envelope contained any information whatsoever that indicated the Notice concerned a debt.

Even if the letters were delivered to the Brockton and Closter addresses, the Notices are still not properly considered communications.  Multiple courts have held that sending a letter addressed only to the debtor to the wrong address is not a violation of § 1692c(b). See Strouse v. Enhanced Recovery Co., 956 F. Supp. 2d 627, 634 (E.D. Pa. 2013) (concluding that the defendant had not communicated with a third party by sending letter addressed to a debtor to debtor's parents house); Segal v. National Action Fin. Servs., Inc., No. 8:04-cv-2388, 2006 WL 449176, at (M.D. Fl. Feb. 22, 2006) ("The act of sending one letter addressed to a consumer but sent to the wrong address does not alone appear to indicate a violation of [§ 1692c(b)].")  The Strouse court reasoned that there was no actual communication with a third party because the

debt collector had addressed its communication only to the debtor, had not left voicemail messages, or attempted to communicate with the debtor's parents. 956 F. Supp. 2d at 634. Similarly, in Segal, the defendant sent a "dunning letter" addressed only to the debtor to the debtor's step-son's address. As is the case here, there was no evidence that the envelope was marked with any indicators that would have "communicated" to a third party that the letter was in connection with a debt. Like the mailings in Segal and Strouse, the Notices here were addressed to Plaintiff only, and there is no indication that the envelopes in which the letters were sent contained any information which would indicate the Notices were in connection with debt.

The Court finds the cases cited by Plaintiff to be largely inapposite or unpersuasive. In Venechanos v. Green Tree Servicing, LLC, the court allowed the plaintiff's claim under § 1692c(b) to proceed through a 12(b)(6) motion where the plaintiff had alleged that the defendant gave plaintiff's personal and financial information regarding a debt to an unauthorized third party so that the third party could market financial services products to the plaintiff. 2015 WL 4356326, at *10 (M.D. Pa. 2015). There, however, the issue was whether the defendant's communication with the third party was properly considered "in connection with the collection of a debt." Id. There was no dispute about whether the defendant had actually conveyed the information to the third party.

Similarly unavailing are cases cited by Plaintiff where a defendant either left a voicemail or had a conversation with a third party. See Gryzbowski v. I.C. System, Inc., 691 F. Supp. 2d 618, 625 (M.D.Pa. 2010) (finding an FDCPA violation where defendant left a voicemail message on the plaintiff's voicemail without identifying itself as a debt collector); Berg v. Merchants Ass'n Collection Div., Inc., 586 F. Supp. 2d 1336, 1341–42 (considering the situation "where the third party received the information, in the home of the consumer, after receiving a warning that

the information is intended only for the consumer"); Thomas v. Consumer Adjustment Co., Inc., 579 F. Supp. 2d 1290, 1296 (E.D. Mo. 2008) (holding that a debt collector's phone conversation with a debtor's girlfriend violated § 1692c(b) even though the debt collector did not explicitly impart information regarding the debtor's debt). In each of these cases, there was no doubt that the debt collector actually made contact with a third party.

Plaintiff essentially asks this Court to find Defendant liable for an FDCPA violation because of the possibility that the Notices—even though addressed to Plaintiff only—were received by a third party. Under this reading of the statute, any time a debt collector sends a correspondence concerning a debt to the home address of a debtor, and the debtor cohabitates with others, an FDCPA violation occurs because the debtor's cohabitants could possibly receive the correspondence. With this interpretation the Court cannot agree. Absent any allegation or evidence that a third party actually received the Notices, the Court finds that the Notices sent to the Brockton and Closter addresses do not constitute "communications" in violation of the FDCPA.

### B. Engaging in Harassing, Oppressive, and Abusive conduct in Violation of FDCPA § 1692d

Section 1692d of the FDCPA prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The provision includes a non-exhaustive list of such conduct:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
(2) The use of obscene or profane language the natural consequence of which is to abuse the hearer or reader.
(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
(4) The advertisement for sale of any debt to coerce payment of the debt.

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

§ 1692d(1)–(6). Although whether a debt collector's conduct is considered harassing, abusive, or oppressive is usually a question for a jury, courts do not hesitate to find as a matter of law that a debtor's conduct does not violate § 1692d. See Derricotte v. Pressler & Pressler, LLP, 10-1323, 2011 WL 2971540, at *6 (D.N.J. July 19, 2011).

Courts in this circuit have found repeated, continuous communications to be conduct the natural consequence of which is to harass, oppress, or abuse. See, e.g., Corson v. Accounts Receivable Mgmt., Inc., No. 13-1903, 2013 WL 4047577, at *6 (D.N.J. Aug. 9, 2013) (finding plaintiff stated a claim under §1692d by alleging that the defendant called him every day for approximately two months). However, infrequent communications that do not contain any threatening or vulgar language likely do not rise to the level of actionable conduct under § 1692d. See, e.g., Lightfoot v. Healthcare Revenue Recovery Group, LLC, No. 14-6791, 2015 WL 1103441, at *3 (D.N.J. March 11, 2015) (granting a motion to dismiss where plaintiff had pleaded only that defendant had called him twice over a three month period); Feuerstack v. Weiner, No. 12-4253, 2014 WL 3619675, at *6 (D.N.J. July 22, 2014) (granting summary judgment for the defendant on plaintiff's § 1692d claim where defendant sent a deceptive collection letter threatening legal action but where defendant "did not use violence or obscene language, publish any list or advertisement, or make repetitive phone calls to Plaintiff"). Indeed, multiple courts have opined that § 1692d "prohibits only oppressive and outrageous conduct." Christy v. EOS CCA, 905 F. Supp. 2d 648, 654 (E.D. Pa. 2012) (citing Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 394 (D. Del. 1991)).

Here, Plaintiff alleges that sending the Notices to the Brockton and Closter Addresses was "for an inappropriate purpose" and therefore violates § 1692d. (Compl. ¶ 23.) It argues that the illustrations in § 1692 is a non-exhaustive list, and that Defendant's conduct can be fairly read to violate the statute. (See Pl.'s Br. 20–21.) The Court disagrees. Although the enumerated examples in § 1692d are illustrative and not exhaustive, they all constitute the type of outrageous conduct that one considers to be abusive collection practices. Indeed, the examples include using violence or criminal means, using vulgar obscene language, shaming the debtor by publicizing his debts, and repeatedly phoning the debtor to induce payment. Here, Defendant's conduct does not rise to the level of outrageous, abusive, or annoying conduct enumerated in § 1692d. Defendant did not continuously send Notices, did not use obscene language, or use abusive tactics to induce Plaintiff to pay his debt. Moreover, there is no evidence that anyone at the Brockton and Closter addresses even received the Notices.

Defendant cites Diaz v. D.F. Recovery Corp, 486 F. Supp. 2d 474, 478 (E.D. Pa. 2007) as holding that "express descriptions of communications between the debt collector and other persons than the consumer" violate the FDCPA. (See Pl.'s Br. 20.) However, in so stating, the Diaz court was simply rejecting the defendants' argument that § 1692d is limited to communications between the debt collector and the consumer. 486 F. Supp. 2d at 478. Indeed, as the facts in Diaz demonstrate, a debt collector's conversation with a third party may very well be conduct that harasses, abuses, or oppresses. The creditor in Diaz called the mother of plaintiff-debtor's child and essentially threatened her child and her health if she did not provide her checking account information to pay the plaintiff-debtor's debt. Id. at 476. The Diaz court, however, did not hold that all communications between a debt collector and a third party violate

§ 1692d—the communications must still be the type of abusive or oppressive conduct exemplified in the provision.

Here, the Court finds that Plaintiff has not as a matter of law stated a violation of § 1692d because Defendant's conduct was not the type of outrageous, abusive, harassing conduct exemplified in § 1692d. Defendant's motion for summary judgment on its liability under 15 U.S.C. § 1692d is granted.

## IV. CONCLUSION

For the reasons expressed herein, Defendant's motion for summary judgment is **GRANTED**.

Dated: 03/18/2016                                                    s/Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge